## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA,
## ATLANTA DIVISION

| | |
|---|---|
| LR TRUST, on Behalf of Itself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> SUNTRUST BANKS, INC., WILLIAM H. ROGERS, JR., AGNES BUNDY SCANLAN, DALLAS S. CLEMENT, PAUL R. GARCIA, M. DOUGLAS IVESTER, DONNA S. MOREA, DAVID M. RATCLIFFE, FRANK P. SCRUGGS, JR., BRUCE L. TANNER, STEVEN C. VOORHEES, and THOMAS R. WATJEN, <br><br> Defendants. | Civil Action No. <br><br> <u>CLASS ACTION</u> <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff LR Trust ("Plaintiff"), by and through its undersigned counsel, for its complaint against defendants, alleges upon personal knowledge with respect to itself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.      This is a stockholder class action brought by Plaintiff on behalf of itself and all other public stockholders of SunTrust Banks, Inc. ("SunTrust" or the "Company") against SunTrust and the members of SunTrust's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which SunTrust will be acquired by affiliates of BB&T Corporation ("BB&T") (the "Proposed Transaction").

2.      On February 7, 2019, SunTrust and BB&T issued a joint press release announcing they had entered into an Agreement and Plan of Merger dated February 7, 2019 (the "Merger Agreement") to sell SunTrust to BB&T.  Under the terms of the Merger Agreement, each SunTrust stockholder will receive 1.295 shares of BB&T common stock for each share of SunTrust common stock they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $66 billion.

3.      On March 11, 2019, SunTrust and BB&T filed a joint proxy statement/prospectus on Form S-4 (the "Registration Statement") with the SEC.

The Registration Statement, which recommends that SunTrust stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) SunTrust's and BB&T's financial projections relied upon by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman") in its financial analyses; (ii) the valuation analyses prepared by Goldman in connection with the rendering of its fairness opinion; and (iii) the background process leading to the Proposed Transaction. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as SunTrust stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction.

4.      In short, unless remedied, SunTrust's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated

thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.    This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company's principal executive offices are located in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**THE PARTIES**

8.    Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of SunTrust.

9.    Defendant SunTrust is a Georgia corporation, with its principal executive offices located at 303 Peachtree Street, N.E., Atlanta, Georgia 30308. SunTrust is a leading provider of financial services for consumers, businesses,

Case 1:19-cv-01622-MLB    Document 1    Filed 04/10/19    Page 5 of 30

corporations, institutions and not-for-profit entities. SunTrust's common stock trades on the New York Stock Exchange under the ticker symbol "STI."

10. Defendant William H. Rogers, Jr. ("Rogers") has been Chief Executive Officer ("CEO") and a director of the Company since 2011 and Chairman of the Board since January 2012. Defendant Rogers previously served as Chief Operating Officer ("COO") of the Company from 2010 to 2012 and as President of the Company from 2008 to 2011.

11. Defendant Agnes Bundy Scanlan ("Scanlan") has been a director of the Company since 2017.

12. Defendant Dallas S. Clement ("Clement") has been a director of the Company since 2015.

13. Defendant Paul R. Garcia ("Garcia") has been a director of the Company since 2014.

14. Defendant M. Douglas Ivester ("Ivester") has been a director of the Company since 1998.

15. Defendant Donna S. Morea ("Morea") has been a director of the Company since 2012.

16. Defendant David M. Ratcliffe ("Ratcliffe") has been a director of the Company since 2011.

17.     Defendant Frank P. Scruggs, Jr. ("Scruggs") has been a director of the Company since 2013.

18.     Defendant Bruce L. Tanner ("Tanner") has been a director of the Company since 2015.

19.     Defendant Steven C. Voorhees ("Voorhees") has been a director of the Company since 2018.

20.     Defendant Thomas R. Watjen ("Watjen") has been a director of the Company since 2010.

21.     Defendants identified in paragraphs 10-20 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

22.     BB&T is one of the largest financial services holding companies in the U.S. with $225.7 billion in assets and approximately $33.1 billion market capitalization as of December 31, 2018.  BB&T conducts its business operations primarily through its bank subsidiary, Branch Banking and Trust Company ("Branch Bank").  BB&T's principal executive offices are located at 200 West Second Street, Winston-Salem, North Carolina 27101.  BB&T's common stock trades on the New York Stock Exchange under the ticker symbol "BBT."

## CLASS ACTION ALLEGATIONS

23.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own SunTrust common stock (the "Class").  Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

24.    Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

25.    The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of February 5, 2019, there were 442,341,518 shares of Company common stock issued and outstanding.  All members of the Class may be identified from records maintained by SunTrust or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

26.    Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

a)      Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

b)      Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

c)      Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

27.    Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff has retained competent counsel experienced in litigation of this nature.

28.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

29.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

SUBSTANTIVE ALLEGATIONS

**Background of the Company**

30.     Incorporated in 1984, SunTrust offers a full line of financial services for consumers, businesses, corporations, institutions, and not-for-profit entities, both through branches and through other digital and national delivery channels.  As of December 31, 2018, the Company had total assets of $216 billion and total deposits of $163 billion.

31.     SunTrust's principal subsidiary is SunTrust Bank (the "Bank").  The Bank offers deposit, credit, mortgage banking, and trust and investment services to its clients through a selection of full-, self-, and assisted-service channels.

32.     On October 19, 2018, the Company announced its third quarter 2018 financial results, including a 47% increase in diluted earnings per share to $1.56 compared to $1.06 in the third quarter of 2017.  Commenting on the quarter's financial results, defendant Rogers stated:

> Our performance this quarter provides further validation of our successful execution against the Company's key strategies.  Our focus on efficiency continues to drive good results, with the year-to-date tangible efficiency ratio improving by 150 basis points.  Additionally, our commitment to investing in growth to meet more client needs is driving good loan growth which helped offset lower noninterest income. . . . We have revenue momentum going into the fourth quarter of the year, and 2018 is on track to be the seventh consecutive year of growth in earnings per share, improved efficiency, and higher capital returns.

33.     On January 18, 2019, SunTrust announced its fourth quarter and full year 2019 financial results.  For the year, diluted earnings per share was $5.74, a

28% increase compared to 2017 diluted earnings per share.  For the quarter, total revenue was approximately $2.37 million, a 4% increase compared to total revenue of $2.27 million in the fourth quarter of 2017.  Defendant Rogers commented on the successful results, stating:

> Our performance this quarter provided a good conclusion to a strong year for SunTrust. In 2018, we continued to deliver on the commitments we have made to our owners: we achieved our sub-60% adjusted tangible efficiency ratio target one year ahead of schedule, and we delivered our seventh consecutive year of improved earnings per share, efficiency, and capital returns. . . . Going into 2019, our diverse business mix, ongoing investments in growth and technology, and consistent underwriting discipline, give me confidence in our ability to continue to deliver long-term value for our owners.

**The Sale Process**

34.    In meetings held in March, April and June 2018, defendant Rogers told the Board that from time to time he discussed with other bank chief executives, including Kelly S. King ("King"), Chairman and CEO of BB&T and Branch Bank, their general views with respect to industry trends.

35.    On August 10, 2018, King and defendant Rogers met and discussed general industry matters and the cultures of both BB&T and SunTrust.

36.    At the Board's November 2018 meeting, the Board approved defendant Rogers discussing with King matters regarding the viability of a strategic business combination between BB&T and SunTrust.

37.     On December 21, 2018, defendant Rogers and King met and discussed a potential merger of equals transaction between the two companies, including that the board and executive leadership of the combined company would be split 50/50.

38.     On December 27, 2018, SunTrust engaged Goldman Sachs to act as its financial advisor in connection with a possible transaction with BB&T.

39.     On January 3, January 4 and January 8, 2019, defendant Rogers and King held discussions regarding a potential merger of equals between the two companies.

40.     On January 10, 2019, two senior executives from each of SunTrust and BB&T met.  At the conclusion of this meeting, the participants agreed to recommend for consideration and further discussion by King and defendant Rogers a range of exchange ratios between 1.28 and 1.31 shares of BB&T common stock per share of SunTrust common stock.

41.     Between January 10 and January 20, 2019, representatives of senior management of SunTrust and BB&T, including King and defendant Rogers, had several discussions about a potential exchange ratio and the potential other terms of the transaction, including terms relating to the corporate governance structure of the combined entity if a merger were consummated.

42.     On January 21, 2019, King and defendant Rogers discussed a potential

exchange ratio of 1.295 shares of BB&T common stock per share of SunTrust common stock.

43.    On January 27, 2019, the Board met to discuss the potential merger of equals with BB&T and asked SunTrust senior management and its legal and financial advisors a number of questions about the proposed merger.

44.    On January 30, 2019, the Board convened a meeting to discuss in greater detail certain questions that arose during and following the January 27, 2019 Board meeting.

45.    Beginning on February 1, 2019, SunTrust & BB&T commenced due diligence.

46.    On February 3, 2019, BB&T provided the applicable parties with drafts of defendant Rogers' and King's respective employment agreements with BB&T to be effective upon and subject to, closing of the merger.

47.    On February 5, 2019, the Board met to discuss the terms of the Proposed Transaction.

48.    At a February 6, 2019 Board meeting, SunTrust management provided the Board with an overview of applicable diligence findings.

49.    That evening, the Board convened a special meeting to consider the Proposed Transaction.  Goldman Sachs rendered its fairness opinion and the Board

approved the Merger Agreement.

50.    Early in the morning on February 7, BB&T and SunTrust executed the

Merger Agreement.

**The Proposed Transaction**

51.    On February 7, 2019, SunTrust and BB&T issued a joint press release

announcing the Proposed Transaction, which states, in relevant part:

> ATLANTA and WINSTON-SALEM, N.C., Feb. 7, 2019 /PRNewswire/ -- SunTrust Banks, Inc. (NYSE: STI) and BB&T Corporation (NYSE: BBT) announced today that both companies' boards of directors have unanimously approved a definitive agreement to combine in an all-stock merger of equals valued at approximately $66 billion. The combined company will be the sixth-largest U.S. bank based on assets and deposits.
>
> The pro forma company will have approximately $442 billion in assets, $301 billion in loans, and $324 billion in deposits serving more than 10 million households in the United States, with leading market share in many of the most attractive, high-growth markets in the country. The incremental scale positions the new company to achieve industry-leading financial and operating metrics with the strongest return profile among its peers.
>
> In a reflection of the equal contribution both banks bring to the new institution, the combined company will operate under a new name and brand, which will be determined prior to closing. The combined company's board of directors and executive management team will be evenly split between the two institutions. A new corporate headquarters will be established in Charlotte, NC, including an Innovation and Technology Center to drive digital transformation. In the current home markets for both companies, the combined company will maintain the Community Banking Center in Winston-Salem, NC and the Wholesale Banking Center in Atlanta, GA. This continued strong presence is also

- 13 -

supported by the combined company's commitment to increase the respective banks' current levels of community investment.

GAAP and Cash EPS accretion per BB&T share in 2021 is expected to be approximately 13% and 17%, respectively (based on Street estimates). GAAP and Cash EPS accretion per SunTrust share in 2021 is expected to be approximately 9% and 16%, respectively (based on Street estimates). SunTrust shareholders will receive a 5% increase in their dividend upon consummation of the transaction based upon each Company's current dividend per share. Under the terms of the merger agreement, SunTrust shareholders will receive 1.295 shares of BB&T for each SunTrust share they own. BB&T shareholders will own approximately 57% and SunTrust shareholders will own approximately 43% of the combined company.

"This is a true merger of equals, combining the best of both companies to create the premier financial institution of the future," said BB&T Chairman and Chief Executive Officer Kelly S. King. "It's an extraordinarily attractive financial proposition that provides the scale needed to compete and win in the rapidly evolving world of financial services. Together with Bill's leadership and our new SunTrust teammates, we're going to bring the best of both companies forward to serve our clients and communities."

William H. Rogers, Jr., Chairman and Chief Executive Officer of SunTrust, said, "By bringing together these two mission- and purpose-driven institutions, we will accelerate our capacity to invest in transformational technologies for our clients. Our shared culture embraces the disruption of technology and we will take this innovative mindset to expand our leadership in the next chapter of these historic brands. With our geographic position, enhanced scale and leading financial profile, these two companies will achieve substantially more for clients, teammates, associates, communities, and shareholders than we could alone. I have tremendous respect for Kelly, his leadership team and the BB&T associates. We will leverage our respective strengths as we focus together on the future."

**<u>Insiders' Interests in the Proposed Transaction</u>**

- 14 -

52.    SunTrust insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of SunTrust.

53.    Notably, certain of the Company's executive officers and directors have secured positions for themselves upon consummation of the Proposed Transaction. For example, defendant Rogers entered into an employment agreement with BB&T and Branch Bank pursuant to which, defendant Rogers will serve as President and COO of the combined company and combined bank through September 12, 2021. Immediately following this period, defendant Rogers will serve as CEO of the combined company and combined bank.  Additionally, the Registration Statement sets forth:

> The board of directors of the combined company and the combined bank in the merger will each consist of twenty-two (22) members, including Mr. Rogers and ten (10) other members of the SunTrust board of directors as of immediately prior to the effective time, designated by SunTrust. David M. Ratcliffe will serve as lead director until March 12, 2022.

Registration Statement at 95.

54.    Moreover, if they are terminated in connection with the merger, the Company's named executive officers stand to receive millions in golden parachute

compensation, as set forth in the following table:

*Golden Parachute Compensation*

| Name | Cash ($)(1) | Equity ($)(2) | SERP ($)(3) | Perquisites / benefits ($)(4) | Total ($)(5) |
|---|---|---|---|---|---|
| William H. Rogers, Jr. | $10,522,617 | $15,250,126 | $4,653,567 | $38,339 | $30,464,649 |
| L. Allison Dukes | $ 3,791,905 | $ 3,281,397 | — | — | $ 7,073,303 |
| Mark A. Chancy | $ 4,900,582 | $10,852,004 | $2,193,745 | — | $17,946,331 |
| Hugh S. Cummins III | $ 4,737,229 | $ 9,922,302 | — | — | $14,659,532 |
| Scott E. Case | $ 2,762,507 | $ 2,220,219 | — | — | $ 4,982,726 |
| Aleem Gillani(6) | — | $  918,637 | — | — | $  918,637 |

## The Registration Statement Contains Material Misstatements or Omissions

55.     The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to SunTrust's stockholders. The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

56.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) SunTrust's and BB&T's financial projections relied upon by the Company's financial advisor Goldman in its financial analyses; (ii) the valuation analyses prepared by Goldman in connection with the rendering of its fairness opinion; and (iii) the background process leading to the Proposed Transaction.  Accordingly, SunTrust stockholders are being asked to vote for the Proposed Transaction without all material information at their disposal.

### *Material Omissions Concerning SunTrust's and BB&T's Financial Projections*

57.    The Registration Statement is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

58.    First, the Registration Statement omits material information regarding SunTrust management's financial projections and the financial analyses performed by the Company's financial advisor Goldman.

59.    For example, in connection with rendering its fairness opinion and performing its related financial analyses, Goldman reviewed, among other things:

> certain internal financial analyses and forecasts for SunTrust on a stand-alone basis prepared by its management and certain financial analyses and forecasts for BB&T on a stand-alone basis and pro forma for the merger prepared by the management of SunTrust, in each case, as approved for Goldman Sachs' use by SunTrust (referred to in this section as the "forecasts"), including certain operating synergies projected by the management of SunTrust to result from the merger, as approved for Goldman Sachs' use by SunTrust (referred to in this section as the "synergies").

Registration Statement at 61.

60.    Specifically, in connection with Goldman's *Illustrative Discounted Dividend Analyses for SunTrust on a Stand-Alone Basis*, the Registration Statement states:

> Using discount rates ranging from 8.5% to 10.5%, reflecting estimates of the cost of equity for SunTrust on a stand-alone basis, Goldman Sachs derived a range of illustrative equity values for SunTrust on a stand-alone basis by discounting to present value as of December 31,

2018, (a) the implied distributions to holders of SunTrust common stock over the period beginning December 31, 2018 through December 31, 2023 calculated based on the forecasts assuming at the direction of SunTrust management that SunTrust would make distributions of capital in excess of the amount necessary to achieve a 9.0% CET1 ratio target and (b) a range of illustrative terminal values for SunTrust as of December 31, 2023, calculated by applying illustrative price to EPS multiples ranging from 10.0x to 11.0x (reflecting implied Price/TBV per share exit multiples ranging from 1.6x to 1.8x) to the estimate of SunTrust's terminal year (2024) net income on a stand-alone basis, as reflected in the forecasts.

*Id*. at 65.    The Registration Statement fails, however, to disclose the implied distributions to holders of SunTrust common stock over the period beginning December 31, 2018 through December 31, 2023.

61.    Similarly, in connection with Goldman's *Illustrative Discounted Dividend Analyses for BB&T on a Stand-Alone Basis*, the Registration Statement states:

Using discount rates ranging from 7.5% to 9.5%, reflecting estimates of the cost of equity for BB&T on a stand-alone basis, Goldman Sachs derived a range of illustrative equity values for BB&T on a stand-alone basis by discounting to present value as of December 31, 2018, (a) the implied distributions to holders of BB&T common stock on a stand-alone basis over the period beginning December 31, 2018 through December 31, 2023, on a stand-alone basis, calculated based on the forecasts assuming at the direction of SunTrust management that BB&T would make distributions of capital in excess of the amount necessary to achieve a 10.0% CET1 ratio target and (b) a range of illustrative terminal values for BB&T on a stand-alone basis as of December 31, 2023, calculated by applying illustrative price to EPS multiples ranging from 10.3x to 11.3x (reflecting implied price/TBV

per share exit multiples ranging from 2.0x to 2.2x) to the estimate of BB&T's terminal year (2024) net income on a stand-alone basis, as reflected in the forecasts.

*Id*. at 67.    The Registration Statement fails, however, to disclose the implied distributions to holders of BB&T common stock on a stand-alone basis over the period beginning December 31, 2018 through December 31, 2023.

62.    Additionally, in connection with Goldman's *Illustrative Discounted Dividend Analyses for SunTrust Shares on a Pro Forma Basis*, the Registration Statement states:

Using the forecasts, Goldman Sachs performed illustrative discounted dividend analysis for BB&T on a pro forma basis giving effect to the merger. Using discount rates ranging from 8.0% to 10.0%, reflecting estimates of the cost of equity for BB&T on a pro forma basis giving effect to the merger, Goldman Sachs derived a range of illustrative equity values for BB&T on a pro forma basis by discounting to present value as of December 31, 2018, (a) the implied distributions to/ infusions from holders of BB&T's common stock on a pro forma basis from December 31, 2019 through December 31, 2023 calculated using the forecasts, taking into account the synergies, assuming at the direction of SunTrust management that BB&T would on a pro forma basis make distributions/require infusions of capital as necessary to achieve a 10.0% CET1 ratio target and (b) a range of illustrative terminal values for BB&T on a pro forma basis as of December 31, 2023, calculated by applying illustrative price to EPS multiples ranging from 10.1x to 11.1x (reflecting implied price/TBV per share multiples ranging from 1.9X to 2.1x) to the estimate of BB&T's terminal year (2024) net income on a pro forma basis, as reflected in the forecasts, taking into account the synergies.

*Id*. at 68.    The Registration Statement fails, however, to disclose: (i) the implied

distributions to/ infusions from holders of BB&T's common stock on a pro forma basis from December 31, 2019 through December 31, 2023, taking into account the Synergies, defined below; and (ii) BB&T's terminal year (2024) net income on a pro forma basis, taking into account the Synergies.

63.    Moreover, the Registration Statement fails to disclose: (i) certain operating synergies projected by the management of SunTrust to result from the merger, as approved for Goldman's use by SunTrust (the "Synergies"); (ii) earnings per share ("EPS") for SunTrust for 2020 to 2022, BB&T for 2020 to 2022 and BB&T on a pro forma basis for 2021 to 2023 as utilized in Goldman's *Illustrative Present Value of Future Stock Price Analyses*; and (iii) dividends for each of SunTrust and BB&T on a stand-alone basis for 2020-2022 and BB&T on a pro forma basis for the years 2020 to 2023, as utilized in Goldman's *Illustrative Present Value of Future Stock Price Analyses*.

64.    The omission of this information renders the statements in the "Certain Unaudited Prospective Financial Information" and "Opinion of SunTrust's Financial Advisor" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Goldman's Financial Analyses***

65.    The Registration Statement describes Goldman's fairness opinion and

the various valuation analyses performed in support of its opinion.  However, the description of Goldman's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, SunTrust's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to SunTrust's stockholders.

66.    With respect to Goldman's *Illustrative Present Value of Future Stock Price Analysis for SunTrust*, *Illustrative Present Value of Future Stock Price Analysis for BB&T on a Stand-Alone Basis* and *Illustrative Present Value of Future Stock Price Analyses for SunTrust Shares on a Pro Forma Basis*, the Registration Statement fails to disclose: (i) EPS for SunTrust for 2020 to 2022, BB&T for 2020 to 2022 and BB&T on a pro forma basis for 2021 to 2023; (ii) dividends for each of SunTrust and BB&T on a stand-alone basis for 2020-2022 and BB&T on a pro forma basis for the years 2020 to 2023; and (iii) quantification of the inputs and assumptions to the discount rates utilized by Goldman in each of the analyses.

67.    With respect to Goldman's *Illustrative Discounted Dividend Analyses for SunTrust on a Stand-Alone Basis, Illustrative Discounted Dividend Analyses for*

*BB&T on a Stand-Alone Basis* and *Illustrative Discounted Dividend Analyses for SunTrust Shares on a Pro Forma Basis*, the Registration Statement fails to disclose: (i) the implied distributions to holders of SunTrust common stock over the period beginning December 31, 2018 through December 31, 2023; (ii) the implied distributions to holders of BB&T common stock on a stand-alone basis over the period beginning December 31, 2018 through December 31, 2023; (iii) the implied distributions to/ infusions from holders of BB&T's common stock on a pro forma basis from December 31, 2019 through December 31, 2023, taking into account the Synergies; (iv) BB&T's terminal year (2024) net income on a pro forma basis, taking into account the Synergies; (v) quantification of the inputs and assumptions underlying the discount rate range Goldman utilized in each of the analyses; and (vi) the total number of fully diluted shares of BB&T common stock outstanding, increased by the number of shares of BB&T common stock anticipated to be issued in the merger, as provided by SunTrust management and utilized by Goldman in the pro forma analysis.

68.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

69.    The omission of this information renders the statements in the "Opinion of SunTrust's Financial Advisor" and "Certain Unaudited Prospective Financial Information" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

70.    The Registration Statement fails to disclose material information concerning the background of the Proposed Transaction.

71.    In reaching its decision to approve the Merger Agreement, and recommend approval of the Merger Agreement to its shareholders, the Board considered a number of material factors, including "its review and discussions with SunTrust's senior management concerning the due diligence examination of the operations, financial condition and regulatory compliance programs and prospects of BB&T." *Id*. at 59. Shockingly, for a combination worth an estimated $66 billion, SunTrust only spent six days performing due diligence on BB&T before entering into the Merger Agreement. The Registration Statement must disclose the specifics of SunTrust management's overview of applicable diligence findings provided to the Board at its February 5, 2019 special meeting.

72.    Additionally, the Registration Statement fails to disclose whether a potential merger between the two companies was a topic discussed between King

and defendant Rogers "in various group industry settings" and during their August 10, 2018 discussion.  *Id*. at 53, 54.

73.    Moreover, the Registration Statement fails to disclose the questions that arose during and after the January 27, 2019 Board meeting as discussed in greater detail by the Board at its January 30, 2019 Board meeting.  *Id*. at 56.

74.    The omission of this information renders the statements in the "Background of the Merger" and "SunTrust's Reasons for the Merger; Recommendation of SunTrust's Board of Directors" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

75.    The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision on whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

76.     Plaintiff repeats all previous allegations as if set forth in full.

77.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

78.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about SunTrust's and BB&T's financial projections, the financial analyses performed by the Company's financial advisor, and the background process leading to the Proposed Transaction.  The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

79.     The omissions and false and misleading statements in the Registration

Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

80.    By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

81.    Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

82.    Plaintiff repeats all previous allegations as if set forth in full.

83.    The Individual Defendants acted as controlling persons of SunTrust within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of SunTrust, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

84.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

85.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.    The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Registration Statement.

86.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

87.     By virtue of the foregoing, the Individual Defendants have violated

Section 20(a) of the Exchange Act.

88.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, SunTrust's stockholders will be irreparably harmed.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in its favor on behalf of SunTrust, and against defendants, as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to SunTrust stockholders;

C.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 10, 2019                    **WEISSLAW LLP**

/s/ *Michael A. Rogovin*
Michael A. Rogovin
Georgia Bar No. 780075
476 Hardendorf Ave. NE
Atlanta, GA 30307
Tel.: (404) 692-7910
Fax: (212) 682-3010
mrogovin@weisslawllp.com
              -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*